# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

ERNEST O. BROOKS,

    Plaintiff,

v.                                      Case No. 3:24-cv-549-MMH-PDB

BINDERHOLZ LIVE OAK, LLC,

    Defendant.

## **O R D E R**

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law (Doc. 14; Motion), filed on July 5, 2024. In the Motion, Defendant, Binderholz Live Oak, LLC (Binderholz), seeks dismissal of all claims set forth in Plaintiff's Verified Amended Complaint (Doc. 12; Amended Complaint), filed on June 21, 2024. On August 7, 2024, Plaintiff, Ernest O. Brooks, filed a response to Defendant's Motion. See Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. 22; Response). Accordingly, this matter is ripe for review.

    **I.**     **Legal Standard**

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)), the Court must accept the factual

allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 & n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that

"conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.    Background[1]

In the Amended Complaint, which Brooks signed "under penalty of perjury," Brooks alleges the following facts. Brooks used to work at a lumber mill owned by Klausner Lumber One LLC (Klausner). Amended Complaint ¶¶ 6, 14. He "worked in every department … without complaint or discipline for two years." Id. ¶ 14. According to Brooks, he was constructively discharged from Klausner in December 2017 "because of his association with his disabled wife … after requesting and taking leave" under the Family Medical Leave

---

[1] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to Brooks, and accept all reasonable inferences that can be drawn from such allegations. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa County, 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint and may well differ from those that ultimately can be proved.

Act (FMLA). Id. ¶¶ 6, 7. Brooks also "voiced opposition to [Klausner's] unlawful employment practices during his employment" there. Id. ¶ 26.[2] In May 2018, Brooks "filed a charge of discrimination against Klausner … alleg[ing] disability discrimination … ." Id. ¶ 7. Then, in April 2019, Brooks sued Klausner, also "alleging disability discrimination under the Florida Civil Rights Act [(FCRA)] … and violations of the [FMLA] … ." Id. In that lawsuit, Brooks asserted "that after taking intermittent leave for his wife's serious health conditions, Klausner relocated [him] to a shift that it knew [he] could not work due to his wife's serious medical condition." Id. ¶ 32. Brooks further alleged that "Klausner then took adverse personnel actions against [him] for using protected leave, and then constructively terminated him because of his need for leave." Id. In support of the claims in that lawsuit, Brooks filed the sworn statement of Kenneth Beasley, another Klausner employee who "worked with [Brooks] daily" and was "highly qualified." Id. ¶ 16. About a year after Brooks sued Klausner, Klausner "filed for bankruptcy." Id. ¶ 8. According to Brooks, in 2020 or 2021, Binderholz

---

[2] When Brooks describes how he opposed Klausner's practices while still employed there, he refers to "Defendant." Amended Complaint ¶ 26. Because the Amended Complaint makes it clear that Brooks alleges he never worked for Binderholz, the Court concludes Brooks intends to reference Klausner, not Defendant (Binderholz).

- 4 -

"purchased Klausner's assets and plant" and began operating the plant under the Binderholz name. Id.

After Binderholz purchased the plant, it rehired many of the employees who worked at the plant when Klausner owned it—in all, Brooks names thirteen former Klausner employees who returned to work at the plant under Binderholz's ownership. Id. ¶¶ 9, 10, 20. "Several" of these people "had less experience than" Brooks. Id. ¶ 15. Also among the rehired employees are Daniel Dorfer, Klausner's Plant Manager when Brooks was discharged (and now, Binderholz's Plant Manager), and Wayne Whisnat, a Supervisor. Id. ¶ 10. Dorfer called two former Klausner employees to ask them to come back to the plant and work under Binderholz. Id. ¶¶ 17, 20. Also hoping to return to work at the plant, Brooks applied to Binderholz for "multiple positions on multiple occasions" starting "in 2020 and into 2022." Id. ¶ 12. His applications to Binderholz—all unsuccessful—mentioned his previous employment with Klausner. Id. ¶¶ 13, 18. When Brooks asked the Binderholz Human Resources Director, William Snipes, why he was not being hired despite his prior experience, Snipes told him to "keep trying back." Id. ¶ 14 (internal quotation marks omitted). According to Brooks, Snipes never gave Brooks a "legitimate reason" for why he was not hired at Binderholz. Id. ¶ 15. The only former

Klausner employees Brooks is aware of who weren't rehired at Binderholz are himself and Beasley, the affiant in Brooks's case against Klausner. Id. ¶ 18.

In the Amended Complaint, Brooks brings two claims against Binderholz. In Count I, Brooks brings a claim for retaliation under the FCRA, alleging that Binderholz's actions amount to "unlawful retaliation after [Brooks] reported or opposed unlawful employment practices … under Chapter 760, Florida Statutes." Id. ¶ 24. Brooks contends "he is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter." Id. ¶ 27. In Count II, Brooks brings a claim for retaliation under the FMLA, alleging that Binderholz's "refusal to hire [him] is a willful violation of the FMLA" arising out of Brooks's exercise of FMLA rights at Klausner and his previous lawsuit against Klausner. Id. ¶¶ 31–35.

### III.  Discussion

The FCRA retaliation provision provides: "It is … unlawful … for an employer … to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge … under this section." Fla. Stat. § 760.10(7). The FMLA retaliation provision provides: "It shall be unlawful for any person to discharge or in any other manner discriminate

against any individual because such individual … has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter … ." 29 U.S.C. § 2615(b). In the Motion, Binderholz argues the Amended Complaint should be dismissed because Brooks fails to plead causation.[3] For the reasons that follow, the Court concludes the Motion is due to be denied because drawing all reasonable inferences in Brooks's favor, Brooks alleges sufficient facts to make it plausible that had he not engaged in protected activity, Binderholz would not have failed to hire him at the plant.

For both FCRA and FMLA retaliation claims, the causation standard is but-for causation. See Palm Beach Cnty. Sch. Bd. v. Wright, 217 So. 3d 163, 165 (4th DCA 2017) (en banc) (following federal Title VII retaliation caselaw in holding that but-for causation applies to FCRA retaliation claims); Lapham v. Walgreen Co., 88 F.4th 879, 893 (11th Cir. 2023) (holding that but-for causation applies to FMLA retaliation claims). Thus, the Court—like the parties—analyzes causation for the FCRA and the FMLA claims together.

---

[3] In one paragraph, and citing no legal authority, Binderholz also contends that Brooks "does not sufficiently [allege] he engaged in protected activity with respect to Binderholz." Motion at 11. Binderholz does not develop this argument—which is itself surrounded by causation analysis—and none of the cases Binderholz cites in the Motion concern the "protected activity" element. Accordingly, for the purposes of resolving the Motion, the Court treats only the causation element as disputed and accepts but does not decide that Brooks has otherwise pled sufficient facts to raise the reasonable inference that Binderholz is liable to him for FCRA and FMLA retaliation. See Iqbal, 556 U.S. at 678.

To succeed at the pleading stage, an employment-retaliation plaintiff must simply allege sufficient facts to meet the pleading requirements of Rule 8. Swierkiewicz, 534 U.S. at 511–14. Thus, the question is whether, taking the allegations in the Amended Complaint as true and drawing all reasonable inferences in Brooks's favor, Brooks "give[s] [Binderholz] fair notice of what the … claim is and the grounds upon which it rests." See Erickson, 551 U.S. at 93 (quoted) (internal quotation marks and quoted authority omitted) (omission in original). Brooks's claims are sufficient if he has plead "factual content that allows the court to draw the reasonable inference that [Binderholz] is liable for" retaliation. See Iqbal, 556 U.S. at 678 (quoted).

This is not a high burden, and a plaintiff need not establish the prima facie case of retaliation. See Swierkiewicz, 534 U.S. at 510 ("The prima facie case under McDonnell Douglas … is an evidentiary standard, not a pleading requirement.").[4] At the pleading stage, "'[t]o establish a causal connection, a

---

[4] The Eleventh Circuit has explained the McDonnell Douglas prima facie framework as follows:

> [W]hen a plaintiff alleging retaliation presents only circumstantial evidence and no direct evidence, we apply the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801–05 (1973). See McAlpin v. Sneads, 61 F.4th 916, 927 (11th Cir. 2023). …
> Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. Id. To do so, the plaintiff must show that "(1) [s]he engaged in statutorily protected [conduct]; (2) [s]he suffered an adverse employment action; and (3) there is some causal relation between the two events.

Lapham, 88 F.4th at 889 (citation reformatted) (alterations in original).

plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" Glover v. Donahoe, 626 Fed. App'x 926, 931 (11th Cir. 2015) (quoting Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002)).[5]

Here, the Court readily concludes that Brooks has alleged sufficient facts to make it plausible that had he not engaged in protected activity while working at the plant under Klausner, he would not have been passed over for employment at the plant under Binderholz. Brooks alleges that he is qualified, having worked in every department at Klausner with no disciplinary record, Amended Complaint ¶ 14; that many employees, including several with less experience than himself, were rehired, id. ¶¶ 9, 10, 20; that the only two employees he is aware of who weren't rehired are himself and a "highly qualified" coworker who provided an affidavit supporting his case against Klausner, id. ¶¶ 16, 18; that members of upper management, including the plant manager and a supervisor, were rehired, id. ¶ 10; that the plant manager called two former Klausner employees to ask them to work at

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Binderholz, id. ¶ 17; that Brooks mentioned his former employment with Klausner on his applications to Binderholz, id. ¶ 13; that Brooks was simply told "keep trying back" when he asked why he was not being hired, id. ¶ 14; and that Binderholz retaliated for his protected conduct at its first opportunity to do so: when Brooks first applied to work at the plant under Binderholz, id. ¶¶ 6, 12. The Court concludes that it is reasonable to infer from these allegations that a plant manager would know about lawsuits filed by a former employee and would have influence in hiring decisions. Moreover, given Brooks's allegations that Binderholz passed over two former Klausner employees who participated in protected activities, and instead hired less-qualified employees, it is plausible that Binderholz's decision to not hire Brooks was due to his alleged protected activities. At the very least, Brooks's allegations make it plausible that his protected activities and Binderholz's decision to not hire him were "not wholly unrelated." See Glover, 626 Fed. App'x at 931 (quoted). And Brooks has certainly "give[n] [Binderholz] fair notice of what the … claim is and the grounds upon which it rests." See Erickson, 551 U.S. at 93 (quoted) (internal quotation marks and quoted authority omitted) (omission in original).

Binderholz's arguments to the contrary fail. As a preliminary matter, Binderholz applies the evidentiary prima facie case standard under

McDonnell Douglas, and not the plausible pleading standards of Twombly and Iqbal. See Motion at 7–10 (outlining the prima facie case, describing what the plaintiff is required to "prove," and relying primarily on cases disposed of at summary judgment or trial). But at the motion to dismiss stage, Brooks is not required to prove anything; rather, Brooks need only allege sufficient facts to make it plausible that, had he not engaged in protected activity, Binderholz would not have failed to hire him.

Binderholz argues that Brooks has failed to allege that the hiring decisionmakers knew about Brooks's alleged protected conduct and that any adverse action was too remote in time to establish causation. See Motion at 11–12. But the cases Binderholz relies on are distinguishable and, as discussed above, Brooks's allegations do suffice to raise the inference that decisionmakers at Binderholz would have known about his protected conduct.[6] Moreover, Brooks does not rely solely on temporal proximity to raise the inference of causation.

Binderholz also relies on Breeden, in which the Supreme Court held that the plaintiff failed to meet her burden of proving causation at summary

---

[6] Binderholz is correct that Brooks does not allege that he named Binderholz in his charge or lawsuit against Klausner, see Motion at 11. But it does not follow that Brooks failed to allege that Binderholz knew about his protected activities; as explained above, Brooks's other allegations make it plausible that decisionmakers at Binderholz knew about Brooks's protected activities at Klausner.

- 11 -

judgment when there was "no indication" that her supervisor knew about her protected activity when the supervisor proposed the adverse employment action. See Motion at 8–9 (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam)). But the case before the Court presents the question of whether Brooks is even entitled to discovery on the issue of whether Binderholz's decisionmakers knew about his allegedly protected activities, not the question of whether they did in fact know about those activities. While Brooks's allegations, if true, might not prove causation, his allegations—which include more than mere temporal proximity—suffice to raise the inference that his protected activity was a but-for cause of Binderholz's adverse employment actions. Other cases Binderholz cites to support the contention that Brooks failed to allege that decisionmakers at Binderholz were aware of Brooks's protected activity are nonbinding and similarly distinguishable. MacMillan is a Sixth Circuit case about how successor liability applies to the condition precedent of filing an EEOC charge. See Equal Emp. Opp. Comm'n v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1093–94 (6th Cir. 1974). But this is not a successor-liability case; Brooks seeks to hold Binderholz liable for its own allegedly retaliatory acts, not for Klausner's acts. Litterdragt is a District Court decision in which the court held that the plaintiff failed to allege causation because the plaintiff "[did] not

allege that [a supervisor] was aware" of the plaintiff's protected activity, nor did the plaintiff "allege that [the supervisor] was responsible" for the retaliatory actions, which began before the protected activity happened. See Litterdragt v. Miami-Dade Cnty., No. 14-24737-civ-Torres, 2015 WL 13755504, *6, *8 (S.D. Fla. 2015). But here, Brooks did allege enough facts to make it plausible that the decisionmakers were aware of his protected activities. And Uppal is an unpublished Eleventh Circuit case distinguishable for the same reasons. See Uppal v. Hosp. Corp. of America, 482 Fed. App'x 394, 397 (11th Cir. 2012) (per curiam). As such, the Motion is due to be denied.

Accordingly, it is

**ORDERED:**

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law (Doc. 14) is **DENIED**.

2. Defendant must answer the Amended Complaint in accordance with Rule 12.

**DONE AND ORDERED** in Jacksonville, Florida this 22nd day of October, 2024.

*[Signature]*

MARCIA MORALES HOWARD
United States District Judge

lc33

Copies to:
Counsel of Record